No. 25,008.

JOHN DALSING et al., *Appellants,* v. W. B. LEIB et al., *Appellees.*

SYLLABUS BY THE COURT.

1. MORTGAGE FORECLOSURE—*Breach of Covenants of Warranty May Constitute a Set-off Against Mortgage Note.* Unliquidated damages arising from breach of covenants of warranty may constitute a set-off against a note secured by mortgage on land.

2. SAME—*Excluded Evidence—Not Produced on Motion for New Trial—Not Reviewable.* One wishing to avail himself on appeal of a ruling excluding offered evidence must produce such evidence on a motion for new trial. (R. S. 60-3004.)

3. SAME—*Other Assignments of Error Not Well Founded.* Various assignments of error in an action to foreclose a mortgage held not to be well-founded.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed May 10, 1924. Affirmed.

*Walter S. Keith,* and *Harold McGugin,* both of Coffeyville, for the appellants.

*Charles D. Welch,* of Coffeyville, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to foreclose a mortgage on land conveyed by the plaintiffs to the defendants. The defendants prevailed under a cross-petition for damages because of breach of warranty. Plaintiffs appeal.

The defendants, on September 19, 1918, purchased from the plaintiffs an 80-acre farm in Montgomery county. The purchase price was $4,500, of which amount, $2,100 was paid in cash. The balance, of $2,400, was evidenced by a note and mortgage upon the land conveyed. A deed from plaintiffs to defendants purported to convey the entire estate in the land. It did not convey the entire estate. It was a special warranty deed only. It contained these provisions: *"To Have and to Hold* the same, together with all and singular, the tenements, hereditaments and appurtenances thereunto belonging, or in any wise appertaining, forever." Also, that the property was "free, clear, discharged and unincumbered of and from all former and other grants, titles, charges, estates, and incumbrances of what nature or kind soever; made by the first parties," also a warranty by first parties against "all and every person or persons lawfully claiming the property by or through them."

At the time of the execution of this deed, John M. Dean, trustee, owned a lease on the real estate including "all of the gas in, under and appertaining to said real estate, together with the right, at all times, to enter upon, develop and operate for gas, and to install and remove therefrom the proper pipe lines and fixtures necessary or convenient therefor."

At the time of the conveyance from plaintiffs to defendants there were no oil or gas wells on the property. Prior to that time there had been two gas wells, both of which had been abandoned and plugged three years before. Some time after the execution of the deed to the defendants they demanded a warranty deed, and on November 20, 1919, after negotiations between the parties, another deed in form of a general warranty was executed by plaintiffs to defendants. It contained this statement:

"This deed is made for the purpose of correcting a deed dated September 19, 1918."

At the time of the execution of the second deed, interest then due to the plaintiffs, amounting to $168.40, together with interest (not due) from that date until January 1, 1920, amounting to $16 was paid.

On September 2, 1920, the defendants demanded of plaintiffs that they procure the outstanding title in John M. Dean. Plaintiffs failed to do this and defendants attempted to purchase same but failed.

On January 3, 1921, Dean leased the property for gas to L. L. Coyle. Coyle, under the authority of his lease, entered upon the property, drilled three gas wells, erected a meter house, various pipe lines, constructed drips for wells, made slush ponds, and made and established roads to the wells on the property.

Defendants refused to pay the mortgage without an adjustment of their alleged damages caused by reason of the gas lease. Result, filing of this foreclosure action by plaintiffs, to which defendants set up, as a cross-demand, the breach of the covenants of their warranty deed and damages occasioned thereby. Trial to a jury resulted in an allowance to defendants of an amount sufficient to reduce plaintiffs' verdict to $198. Judgment was, by the court, entered on the verdict, and plaintiffs appeal. In addition to a general verdict the jury were asked and answered special questions as follows:

"Q. 1. Did the defendants, Leib, prior to the execution of the warranty deed

by plaintiffs, write to plaintiffs in substance, that they would not pay anything on their $2,400 note until they had received from the plaintiffs a warranty deed to said real estate? A. Yes.

"Q. 2. At the time plaintiffs delivered the warranty deed to the defendants, did the defendants pay the interest on the $2,400 note up to January 1, 1920? A. Yes.

"Q. 3. If you answer the above question 'yes,' state whether or not the defendants paid said interest before the same was due? A. Yes.

"Q. 4. Did the defendants on or about the second day of September, 1920, cause a demand to be made upon the plaintiffs, to procure for them the gas rights on said real estate? A. Yes.

"Q. 5. If you answer the above question 'Yes,' did the plaintiffs fail to comply with said demand? A. Yes.

"Q. 6. Do you find that one L. L. Coyle, under the terms of a gas lease from John M. Dean, Trustee, has drilled any gas wells on said real estate since the execution of said warranty deed? A. Yes.

"Q. 7. Do you find that John M. Dean, as Trustee, has received and retained the royalties from the gas produced from said land since the execution of said warranty deed? A. Yes.

"Q. 8. If you answer the above questions 'yes,' then state, approximately. how much said royalties have amounted to since the execution of said warranty deed by the plaintiffs. A. Between $700 and $800, last two wells $4.00 per day."

Plaintiffs contend that the court committed error in rejecting testimony showing that the defendants knew of the defective title of the property at the time of the purchase. The record, however, discloses no production, on the motion for new trial, of evidence refused at the trial. Under the circumstances no question for review on that point is here presented. (R. S. 60-3004 and cases there cited.) Furthermore, it appears that whatever controversy existed between the parties was superseded and concluded by the general warranty deed of November 20, 1919.

It is contended by plaintiffs that the defendants, being in possession of the property, should not have been permitted to defend the foreclosure action on account of defect of title or failure of warranty. We cannot agree with this contention. The defendant may set forth in his answer as many grounds of defense, counter-claim and set-off for relief as he may have, whether they be such as have been heretofore denominated legal and equitable, or both. (R. S. 60-710.) It would have served no useful purpose to require the defendants to file a separate action to recover damages for breach of plaintiffs' warranty. The spirit of the code favors the settlement, in one action, of different controversies where the circumstances

interpose no obstacle (*Ruby v. Baker*, 106 Kan. 855, 857. See, also, *Gardner v. Rishner*, 35 Kan. 93, 10 Pac. 584; *Railroad Co. v. Thisler*, 90 Kan. 5, 133 Pac. 539; *Miller v. Thayer*, 96 Kan. 278, 150 Pac. 537; *Hodge v. Bishop*, 96 Kan. 419, 151 Pac. 1105; *Bank v. Elliott*, 97 Kan. 64, 154 Pac. 255; 7 R. C. L. 1190; *Mayor v. Mabie*, 13 N. Y. 151; *Green v. Batson*, 71 Wis. 54.)

Under all the circumstances, the defendants were entitled to the warranty which plaintiffs had agreed in the beginning they were to receive. The execution by the plaintiffs of the second deed conceded defendants' contention. The second deed became the contract between the parties, and the fact that the defendants, at the time of its delivery, knew plaintiffs' title was defective, did not relieve the plaintiffs of their obligation to perform the covenants therein. A grantee may rely upon his grantor's covenants of warranty, even though he knew, at the time he received the deed, that the title to the premises conveyed was defective. (11 Cyc. 1066. See, also, *Clark v. Fisher* 54 Kan. 403.)

We have considered various objections raised by plaintiffs, but find no error which would warrant a reversal.

The judgment is affirmed.